NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
ELISA FERNANDEZ (Cal. Bar No. 172004)
JENNIFER CHOU (Cal Bar No. 238142)
Assistant United States Attorneys
Public Corruption & Civil Rights Section/
Violent & Organized Crime Section
     1500/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7383/6482
     Facsimile: (213) 894-8601/1373
     E-mail:    elisa.fernandez@usdoj.gov
                jennifer.chou@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-104-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION; DECLARATION OF ELISA FERNANDEZ; EXHIBITS 1-5 |
| v. | |
| VASKEN KENNETH GOURDIKIAN, | Hearing Date: February 4, 2019
Hearing Time: 11:00 a.m.
Location:   Courtroom of the
            Hon. Stephen V. Wilson |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Elisa Fernandez and Jennifer Chou, hereby files its sentencing position regarding Vasken Kenneth Gourdikian.

The government's sentencing position is based upon the attached memorandum of points and authorities, the attached Declaration of Elisa Fernandez, the attached exhibits, the files and records in this case, the Presentence Report, the United State Probation Office's

Disclosed Recommendation, and such further evidence and argument as the Court may permit.

The government requests the right to file a response to any sentencing position filed or submitted by the defendant and to file supplemental sentencing position(s) that may be necessary.

Dated: January 20, 2019        Respectfully submitted,

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


          /s/
ELISA FERNANDEZ
JENNIFER CHOU
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES....................................................1

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I.   INTRODUCTION.......................................................1

II.  USPO SENTENCING CALCULATION & RECOMMENDATION.......................2

III. INDICTMENT & PLEA AGREEMENT........................................3

IV.  STATEMENT OF FACTS.................................................3

V.   FULL CONSIDERATION OF THE SECTION 3553(a) FACTORS WARRANTS
     A 30-MONTH TERM OF IMPRISONMENT, FOLLOWED BY A THREE-YEAR
     PERIOD OF SUPERVISED RELEASE, AND A $25,000 FINE...................8

     A.   18 U.S.C. § 3553(a)(1)........................................9

     B.   18 U.S.C. § 3553(a)(2).......................................14

     C.   18 U.S.C. § 3553(a)(3)-(6)...................................14

VI.  CONCLUSION........................................................15

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                                     PAGE

**STATUTES**

18 U.S.C. § 3553..............................................1, 8, 14

18 U.S.C. § 3553(a)(1)..............................................9

18 U.S.C. § 3553(a)(2).............................................13

18 U.S.C. § 3553(a)(3)-(6).........................................14

18 U.S.C. § 3571(b).................................................2

18 U.S.C. § 922..................................................1, 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On September 20, 2018, defendant Vasken Kenneth Gourdikian ("defendant" or "Gourdikian") pleaded guilty to Counts One and Three of a four-count Indictment filed on March 1, 2018. (Presentence Report ("PSR") ¶ 1.)  Count One charged Gourdikian with engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A).  Count Three charged Gourdikian with making false statements during the purchase of firearms on two separate dates, in violation of 18 U.S.C. § 922(a)(6).  At all times charged in the Indictment, and for more than decade prior, Gourdikian was a sworn peace officer with the Pasadena Police Department ("PPD").  ("PSR") ¶ 13.)

The conduct to which defendant pleaded guilty is serious.  Over a span of three years, Gourdikian sold, without a federal firearms license, at least 108 firearms.  Three-quarters (80 of 108) of the firearms he sold were "off roster" firearms – firearms that under state law could not be purchased new by general members of the public directly from a licensed firearms dealer.  To facilitate the firearms dealing, Gourdikian advertised and sold firearms through an on-line firearms forum and marketplace (Calguns.net).  Gourdikian often posted advertisements for "brand new in box," "never fired," "off roster" handguns that drew non-law enforcement customers.  At least once, Gourdikian lied on a federal firearms form (ATF Form 4473) in order to facilitate a firearms sale (Count Three).  As set forth below, based on the offense conduct, defendant's personal history and mitigating factors, and the factors set forth in 18 U.S.C. § 3553, the government, per the plea agreement, respectfully requests the

Court to impose a sentence consisting of a 30-month term of imprisonment, to be followed by a 3-year period of supervised release with the terms and conditions recommended by the Probation Office, and a total fine of $25,000.

**II.   USPO SENTENCING CALCULATION & RECOMMENDATION**

On December 27, 2018, the United States Probation Office ("USPO") filed its Presentence Report ("PSR") and Recommendation Letter in this matter.  As detailed in the PSR, the USPO determined that the total offense level was 19 and that the defendant fell within Criminal History Category I.  (PSR ¶¶ 39-46.)  Using an offense level of 19 (resulting from a base offense level of 12, plus 8 levels for dealing 100 to 199 firearms, and 2 levels for abusing a positon of trust) and a Criminal History Category of I, the USPO calculated an applicable guideline range of 30 to 37 months.  (PSR ¶¶ 79-81.) In regards to the fine, 18 U.S.C. § 3571(b) provides for a maximum fine of $250,000 per count.  (PSR ¶ 90.)  The USPO concluded that the guidelines provide for a fine range of $10,000 to $100,000 for this offense.  (PSR ¶¶ 90, 92.)

The USPO recommended that defendant Gourdikian be ordered to serve a custodial sentence of 30 months, followed by one-year term of supervised release with six enumerated terms and conditions.  (USPO Disclosed Sentencing Recommendation, December 21, 2018 (hereinafter "USPO Recommendation").  The USPO also recommended the Court order the defendant to pay a special assessment of $200 and a total fine of $10,000.[1] (*Id.*)

---

[1] The USPO's recommended fine consists of a $5,000 fine on Count One and a separate $5,000 fine on Count Three with the total fine of $10,000 to be paid in full immediately.  (*Id.*)

2

**III.  INDICTMENT & PLEA AGREEMENT**

On September 20, 2018, defendant Gourdikian pleaded guilty to Counts One and Three of a four-count Indictment.[2] Defendant admitted to dealing firearms without a license from March 15, 2014 through February 9, 2017.  Defendant also admitted to making a false statement in conjunction with a firearm's purchase on March 18, 2014. (PSR ¶¶ 1-2.)  Pursuant to a written plea agreement, the parties agreed to a base offense level of 12 pursuant to USSG §2K2.1(a)(7); an eight-level increase for the number of firearms pursuant to §2K2.1(b)(1)(D); and, a two-level increase for abuse of a position of trust pursuant to §3B1.3. (PSR ¶ 4.)  The parties reserved the right to seek additional specific offense characteristics, adjustments, departures, and variances.  The defendant agreed to forfeit certain property, namely the 62 firearms seized from his home on February 16, 2017.  (PSR ¶¶ 7, 28, 29; Plea Agreement ¶ 3a-h.)  The government agreed to recommend up to three levels for acceptance or responsibility and to seek a sentence of 30 months imprisonment. (PSR ¶ 5.) The government agreed to dismiss the remaining counts at the time of sentencing.  (PSR ¶¶ 8-9.)

**IV.    STATEMENT OF FACTS**

On September 20, 2018, pursuant to the plea agreement, Gourdikian admitted the following:

---

[2] On March 1, 2018, the government filed a four-count Indictment against the defendant. Count One charged the defendant with engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § "922(a)(1)(A).  Counts Two and Three charged him with making false statements in conjunction with firearms purchases on two dates, in violation of 18 U.S.C. § 922(a)(6).  Count Four charged him with possession of unregistered firearm (a short-barreled rifle), in violation of 18 U.S.C. § 5861(d).  (PSR ¶¶ 1-2, 8-9.)  The government agreed to dismiss Counts Two and Four at sentencing.  (PSR ¶¶ 8-9.)

3

Background

Since on or before January 1, 1995, through at least February 27, 2017, Gourdikian was employed as a sworn peace officer with the Pasadena Police Department ("PPD"), a law enforcement agency located in Pasadena, California.  (Plea Agreement ¶ 13; PSR ¶ 12.)

In the Business of Dealing without a License

As charged in Count One, beginning on or before March 15, 2014, and continuing through February 9, 2017, Gourdikian knowingly and intentionally engaged in the business of dealing in firearms without a license.  (Plea Agreement ¶ 13; PSR ¶ 13.)  Gourdikian sold at least one hundred and eight (108) firearms.  (*Id.*)  Many of the firearms that Gourdikian sold were "off roster" firearms, that, is firearms that Gourdikian's non-law enforcement customers could not have purchased directly from a licensed firearms dealer.  (*Id.*)

Further, on at least one occasion, Gourdikian materially made a false statement on a re-certification form prior to taking possession of the firearm; that is, Gourdikian misrepresented that he was the actual buyer of a firearm when, in fact, and as Gourdikian then well knew, he was purchasing the firearm for another individual.  (Plea Agreement ¶ 13; PSR ¶ 14.)

Gourdikian made a business of dealing firearms without a license, in part, by abusing exemptions made available to him under California law as a sworn peace officer.  (Plea Agreement ¶ 13; PSR ¶ 15.)  Of the 108 firearms Gourdikian sold, 80 were off roster firearms.  (*Id.*)  "Off roster," "non-roster," or "unsafe" handguns refer to firearms <u>not</u> listed on a roster of handguns maintained by the California State Department of Justice that specified which handguns can be sold in the State of California by licensed firearms dealers directly to the public.  (*Id.*)  General members of the public (referred to as "non-exempt" purchasers) could not purchase off roster firearms directly from licensed firearms dealers.  (*Id.*)  Gourdikian, as a sworn peace officer, could purchase directly from a dealer new off roster handguns for use in in the discharge of his official duties.  (*Id.*)  Since, at the time, Gourdikian was not prohibited from reselling off roster handguns to non-exempt persons on the secondary market, Gourdikian exploited the privilege afforded to him as a law enforcement officer and sold off roster firearms soon after he acquired them to non-exempt purchasers; that is, persons who were <u>not</u> eligible to purchase off roster firearms on the primary market.  (*Id.*)

On Calguns.net, a members-only online website forum and marketplace devoted to the discussion, sale, and purchase of firearms ("Calguns.net"), Gourdikian posted advertisements to sell firearms,

4

including firearms described as "off roster," "BNIB [brand new in box]" and "never fired." (*Id.*)

False Statement Re: The Actual Buyer of a Smith & Wesson Pistol

On March 8, 2014, Gourdikian purchased a Smith & Wesson Model M&P Shield 9mm semiautomatic pistol bearing serial number HSR7489 (the "Smith & Wesson pistol"), and an off roster Glock model 42 .380 caliber semiautomatic pistol, bearing serial number AAPW899 (the "Glock 42"), at Proforce Law Enforcement, a licensed federal firearms dealer located in Brea, California ("Proforce"). (Plea Agreement ¶ 13; PSR ¶ 16.)

On March 8, 2014, Gourdikian posted on Calguns.net an offer to sell a Smith & Wesson Model M&P Shield 9mm pistol described as "BNIB never fired." On March 9, 2014, Gourdikian updated the post with "SPF [Sale Pending Funds] to [Purchaser A]." (Plea Agreement ¶ 13; PSR ¶ 17.)

On March 18, 2014, Gourdikian picked up the Smith & Wesson pistol from ProForce and signed a re-certification on a Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") Form 4473 ("Form 4473"). (Plea Agreement ¶ 13; PSR ¶ 18.) (*Id.*) On the Form 4473 Gourdikian falsely responded "Yes" to the question of "Are you the actual transferee/buyer of the firearm(s) listed on this form?" (*Id.*) At the time, Gourdikian knew that he was not the actual buyer of the Smith & Wesson pistol because he was purchasing the Smith & Wesson pistol for Purchaser A. (*Id.*) Gourdikian's false statement misled ProForce into believing that Gourdikian was the actual buyer when, in truth and in fact, the Smith & Wesson pistol was for Purchaser A. (*Id.*) Gourdikian's false statement was material because had he revealed that he was purchasing the gun on behalf of Purchaser A, the sale would not have proceeded as ProForce could not sell a gun to an absentee purchaser. (*Id.*) Later that same day, Gourdikian traveled to Ammo Brothers in Ontario, California, and sold the Smith & Wesson pistol to Purchaser A. (*Id.*)

Sale of Off Roster Firearms

On May 23, 2015, Gourdikian went to ProForce to purchase an off roster Glock model 43 pistol bearing serial number ZMY218. (Plea Agreement ¶ 13; PSR ¶ 19.) Gourdikian presented a letter dated May 21, 2015, issued by the Pasadena Police Department, Chief of Police, requesting that the 10-day waiting period be waived and stating that Gourdikian was a "full-time paid Police Lieutenant with the Pasadena Police Department," that Gourdikian was authorized to carry a firearm in the performance of his duties, and that the firearm being purchased, which the letter identified as a Glock 43 pistol, would "be used off duty and is not being purchased for resale." (*Id.*) By

5

presenting this letter, Gourdikian did not have to wait the usual ten-day waiting period. (*Id.*) Instead, Gourdikian took possession of the Glock 43 pistol bearing serial number ZMY218 at that transaction. (*Id.*) While at Proforce for that transaction, Gourdikian purchased eight additional handguns on the same day, including another Glock 43 pistol, this one bearing serial number ZMY219. (*Id.*) In doing so, Gourdikian further capitalized on his peace officer status, which exempted him from a California law that generally prohibited the purchase of more than one handgun within any 30-day period. (*Id.*) On May 28, 2015, he posted a Calguns ad for a Glock 43 pistol. (*Id.*) On June 2, 2015, at the end of the 10-day waiting period, Gourdikian picked up those eight handguns from Proforce. (*Id.*)

On June 4, 2015, at Ammo Bros in Cerritos, California, Gourdikian sold the Glock 43 bearing serial number ZMY219 to Purchaser B. (Plea Agreement ¶ 13; PSR ¶ 20.) The next day, on June 5, 2015, he sold the Glock 43 bearing serial number ZMY218, along with seven of the eight handguns he had purchased on May 23 2018, to Purchaser C. (*Id.*)

On June 20, 2015, at ProForce in Brea, California, Gourdikian purchased two off roster firearms: a Sig Sauer model 1911 Emperor Scorpion pistol, bearing serial number 54B090301 (the "Sig Sauer Emperor Scorpion"), and a Colt model CQBP pistol, bearing serial numbers 9229EGA (the "Colt CQBP"). (Plea Agreement ¶ 13; PSR ¶ 21.)

On June 22, 2015, at All State Police Equipment in Pomona, California, Gourdikian purchased two additional off roster firearms: a Sig Sauer Model P220 .45 semiautomatic pistol, bearing serial number G508354 (the "Sig Sauer P220"), and a Colt model Rail Gun .45 caliber pistol, bearing serial number RG13501 (the "Colt Rail Gun"). (Plea Agreement ¶ 13; PSR ¶ 22.) On July 4, 2015, Gourdikian posted two Calguns.net ads. (*Id.*) The first post offered to sell the Sig Sauer Emperor Scorpion, described as "never been fired," for $1,400 and the Sig Sauer P220, described as "nearly new," for $1,000. (*Id.*) In the second Calguns.net ad, Gourdikian offered to sell the Colt CQBP and the Colt Rail Gun firearms, describing both as "never been fired," "BNIB," and "off roster." (*Id.*) On July 5, 2015, Gourdikian posted that the Colt Rail Gun was "SPF," that is, sold pending funds, but that the Colt CQBP was "still up for grabs." (*Id.*)

On July 6, 2015, at Turner's Outdoorsman in Rancho Cucamonga, California, Gourdikian sold the off roster Colt Rail Gun to Purchaser D. (Plea Agreement ¶ 13; PSR ¶ 23.) On July 17, 2015, at Gunrunners in Duarte, California, Gourdikian sold to non-exempt repeat Purchaser C the following off roster firearms: (1) the Sig Sauer Emperor Scorpion pistol; (2) the Colt CQBP pistol; and (3) the Sig Sauer P220 pistol. (*Id.*)

6

Sale of Mossberg Shotgun to Undercover Agent

On February 8, 2017, Gourdikian posted a Calguns.net advertisement for a Mossberg Model SPX 12-gauge shotgun. (Plea Agreement ¶ 13; PSR ¶ 24.) The advertisement described the Mossberg shotgun as "new in box" and "never fired" and stated a price of "$700 Firm." (*Id.*) The next day, at All State Police Equipment Company located in Pomona, California, Gourdikian sold a Mossberg model SPX 12-gauge shotgun, bearing serial number AF133663, to a customer who was, in fact, an ATF agent working in an undercover capacity, in exchange for $700 in cash. (*Id.*)

The PSR, to which the defendant has no factual objections, found several additional facts, including the following facts:

Search Warrants

On February 15, 2017, agents with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") obtained a federal search warrant for Gourdikian's Calguns.net user account "vgourdik." (Exhibits 1-4.) The account included on-line postings advertising firearms for sale, descriptions and photographs of firearms, and private messages ("PMs) sent and received by Gourdikian regarding various firearm transactions. (*Id.*)

On February 16, 2017, ATF agents executed a search warrant at Gourdikian's residence. Gourdikian possessed 60+ firearms, including "several California-prohibited (AR-type) weapons." (PSR ¶ 25.)

Defendant's Financial Ability to Pay

Defendant's total net worth is 2,265,203.53. (PSR ¶ 74.) Defendant's total monthly income is $19,269, which includes monthly property rental income of $8,999. (PSR ¶ 74.) Defendant's assets include a $120,000 vehicle (Porsche), $50,020.00 in savings, $202,000 in checking accounts (his spouses), securities, a residential

7

property, and two income properties (valued at $700,000 and $900,000). (*Id*.) Defendant's substantial assets led the USPO to conclude that Gourdikian "has the ability to pay a fine within the advisory range." (PSR ¶¶ 74, 76.)

**V.  FULL CONSIDERATION OF THE SECTION 3553(a) FACTORS WARRANTS A 30-MONTH TERM OF IMPRISONMENT, FOLLOWED BY A THREE-YEAR PERIOD OF SUPERVISED RELEASE, AND A $25,000 FINE**

The government and the USPO recommend the imposition of a sentence to include a 30-month term of imprisonment and a fine. (USPO Recommendation.) While the USPO recommends a total fine of $10,000, the government seeks the imposition of a $25,000 fine, consisting of $15,000 on Count One and $10,000 on Count Three.

In assessing a fine, the guidelines provide that "the amount of the fine should always be sufficient to ensure that the fine taken together with other sanctions imposed is punitive." U.S.S.G. § 5E1.2. In determining the amount of the fine, a Court should consider several factors, including the need of the combined sentence to reflect the seriousness of the offense, including the harm to the public and the gain to the defendant, to promote respect for the law, to provide just punishment and to afford adequate deterrence. U.S.S.G. § 5E1.2(d)(1). A court should also consider defendant's ability to pay a fine and the burden the fine would place on the defendant's dependents. U.S.S.G. § 5E1.2(d)(2-3).

A sentence consisting of a custodial term of 30-months, followed by a three-year period of supervised release, and a total fine of $25,000 is warranted given the nature of the offense and defendant's ability to pay. Defendant's assets exceed $2 million and include luxury vehicles (a Porsche and an Alfa Romero), substantial savings and checking accounts (approximately $250,000), a residential

8

property and two rental properties with rental incomes of nearly $9,000 per month, and securities (over $90,000).  (PSR ¶¶ 74, 76.) With an applicable statutory maximum fine of $250,000 and a guideline fine range of $10,000 to $100,000, a total fine of $25,000 remains at the low end.  In light of defendant's substantial assets, the requested total fine of $25,000 imposes a marginal added burden on the defendant and his dependents. The defendant's failure to report the profits from his sale of the firearms during the offense further support a total fine of $25,000.

### A.    18 U.S.C. § 3553(a)(1)

With respect to the nature and circumstances of the offense and history and characteristics of the defendant, a custodial sentence of 30 months and a total fine of $25,000 is warranted.  At the change of plea, Gourdikian admitted to several facts that demonstrate that he dedicated time, attention and labor to the business of dealing firearms (Count One) and that he exploited his status of a sworn law enforcement officer to facilitate his firearms dealings.  He also, on at least one occasion, made a false statement as to the true purchaser of a firearm (Count Three).  Here, Gourdikian sold at least 108 firearms over a three-year period (2014 to 2017).  (PSR ¶ 13.) In order to effectuate these sales, Gourdikian posted numerous advertisements for the sale of firearms on www.Calguns.net under the user name "vgourdik, including the following:

On June 17, 2014, Gourdikian posted a Calguns ad for a Sig Sauer Scorpion .45 caliber pistol, with the description, "This is a brand new in box Sig Sauer 1911 Scorpion in FDE and never fired."  (Exhibit 1.)  Gourdikian made clear that he, "was not interested in trades, and the price is firm."  (*Id.*)

9

1    On March 12, 2016, Gourdikian posted four firearms for sale on
2 Calguns.net -- a Glock model RTF2 Vickers Tactical 19, a Glock model
3 43 mm pistol; a Sig Sauer P229 Legion, and a Smith & Wesson M&P
4 Shield.  (Exhibit 2.)  The post stated, "Off Roster," and that "[a]ll
5 weapons are new in box and never fired."  (*Id.*)  Gourdikian gave
6 "[p]riority given to those who wish to purchase multiples" and
7 emphasized, "NO TRADES."  (*Id.*)
8    On April 29, 2016, Gourdikian posted a Calguns ad for two Sig
9 Legions, models P229 (for $2,500) and P226R (sold as "SPF").
10 (Exhibit 3.)  The post described both firearms as "bnib, never
11 fired."  (*Id.*)  Gourdikian advised customers, "Please NO TRADE
12 OFFERS, preference will go to buyer who wants both."  (*Id.*)
13 Highlighting the uniqueness of the merchandise he offered for sale,
14 Gourdikian added, "[r]are opportunity to own two highly sought after
15 weapons."  (*Id.*)
16    Posts emphasizing "NO TRADES" and the decision to give priority
17 to firearms customers who "purchase multiples" highlight that
18 Gourdikian sought to sell his merchandise as quickly as possible.
19 Posts advertising "off roster" firearms coupled with descriptors such
20 as "brand new in box," "BNIB, and "never fired," show that Gourdikian
21 devoted time and effort to market and sell products that were not
22 accessible to the general public to purchase new.  "Of the 108
23 firearms Gourdikian sold, 80 were off roster firearms."  (PSR ¶ 15.)
24 Thus, three quarters of Gourdkian's sales consisted of off roster
25 firearms – firearms that under California state law his customers
26 could not have purchased directly from licensed federal firearms
27 dealer.  (*Id.*)  Gourdikian purchased new off roster firearms by
28 presenting his police identification to licensed firearms dealers,

10

also referred to as Federal Firearms Licensees ("FFLs").  Because police officers such as Gourdikian were not prohibited at the time from reselling off roster handguns, Gourdikian repeatedly exploited this privilege by selling 80 off roster firearms to non-exempt purchasers.  (*Id.*)  In Gourdikian's words, he was in the business providing non-exempt customers a "rare opportunity" to own "highly sought after weapons," that is "off roster" firearms.  (Exhibit 3.) On March 13, 2016, in response to a customer inquiry about an off roster Glock model Gen 4, Gourdikian responded: "Glocks Gen4 are highly sought after and it's a demand issue…and much of the off roster guns fetch higher prices because they are sought after and not avail[able.]"  (Exhibit 4.)

Gourdikian also leveraged his positon as a police officer to stock up on inventory, by purchasing multiple firearms within a 30-day period (where the average person was restricted to buying one firearm within a 30-day period. (PSR ¶ 19.)  On May 23, 2015, Gourdikian used a letter from his Chief of Police to purchase an off roster Glock 43 pistol bearing serial number ZMY218 from Proforce in La Brea, not having to wait to purchase the firearm Gourdikian took the possession of the firearm the same day.  (*Id.*)  At the same time at the same FFL, Gourdikian purchased eight additional handguns, including a Glock 43 bearing serial number ZMY219.  (*Id.*)  On May 23, 2015, he posted a Calguns ad for the Glock Pistol.  After the ten-day waiting period, he picked up the eight handguns from Proforce.  (*Id.*) On June 4, 2015, he sold the Glock 43 bearing serial number ZMY219 to Purchaser B at Ammno Bros in Cerritos.  (*Id.*)  The next day, Gourdikian sold the Glock 43 pistol bearing serial number ZMY218 and

11

seven of the eight firearms he purchased on May 23, 2018 to Purchaser C. (*Id.*)

By structuring his transactions so that the sale of the firearms did not take place at the same licensed federal firearms dealer where he initially purchased the firearms, Gourdikian further concealed his repeated sales of off roster firearms to non-exempt persons. (PSR ¶ 13.) Gourdikian's repetitive purchases and sales are consistent with the actions of a merchant who sells and restocks his inventory. Here, Gourdikian used his position as a police officer to carry and sell specific inventory; that is, firearms that non-exempt persons could not acquire from an FFL.

On February 8, 2017, Gourdikian posted an advertisement for a "new in box" and "never fired" Mossberg Model SPX 12-guage shotgun for $500. (PSR ¶ 24.) The next day an undercover ATF agent paid Gourdikian $500 cash for the Mossberg. (*Id.*) Immediately after the transaction, Gourdikian sent a text message asking the undercover agent to "place a positive comment on my Itrader [rating]," in order to maintain or improve his Calguns dealer status. (Exhibit 5.)

Defendant's admission of Count Three shows how he falsified information on the ATF Form 4473 in order to make a sale. (PSR ¶¶ 16-18.) On March 8, 2014, Gourdikian purchased a Smith & Weston pistol and posted it as "BNIB never fired" and for sale. (PSR ¶ 16.) (PSR ¶ 17.) On March 9, 2014, Goudikian updated the Calguns post with "SPF [Sale Pending Funds]" to [Purchaser A.]" (*Id.*) Defendant knew at the time he recertified the ATF Form 4473 on March 18, 2014 that he was not the actual buyer of the firearm and thus it was unlawful for Gourdikian to transfer the firearm to Purchaser A. (PSR ¶ 18.) In sum, by structuring transactions to avoid detection

(buying and selling in different locations), purchasing and selling more than one firearm in a 30-day period, and making a false statement on federal firearms forms, Gourdikian concealed the offense conduct for years.

In mitigation, the PSR indicates that he had a stable middle-class childhood and remains with his wife and children. (PSR ¶¶ 57, 60.) At age 47, remains young, but has undergone hip surgery and has high cholesterol. (PSR ¶¶ 29, 64.) Gourdikian has a bachelor's and a master's degree. (PSR ¶ 67-68.) For years, included the three years of the offense conduct, Gourdikian served as a police officer. (PSR ¶¶ 12-13.) The government agrees with the Probation Officer's Recommendation Letter that "Gourdikian's life outside of this offense is considered a factor in mitigation," including his lack of criminal history, his "distinguished career in the Pasadena Police Department," his "supportive family and community," and the fact that he continues to work full-time in construction. USPO Recommendation at 5. However, the government also agrees with the Recommendation Letter which, even in light of such mitigation, "does not recommend a downward variance after considering the aggravating factors related to the offense conduct. On balance, a sentence within the agreed-upon advisory sentencing range would appear to adequately account address the statutory goals of sentencing for this offender." (*Id.*)

A sentence consisting of 30 months in custody, followed by three years of supervised release, and a $25,000 fine is appropriate where Gourdikian elected to exploit repeatedly the privileges afforded to him as a sworn police officer under state law in order to violate federal law by dealing firearms without a license.

### B. 18 U.S.C. § 3553(a)(2)

Section 3553(a)(2) addresses the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant. As the USPO stated, "[t]he need for the sentence to promote respect for the law is evident as the offense occurred in numerous transactions, over a span of several years." (USPO Recommendation, at 5.) A sentence of less than 30-month imprisonment, a fine of less than $25,000, and a term of supervised release of less than three years would fail to provide just punishment or respect for the law. At the same time, a custodial sentence of no more than 30 months, followed by a three-year period of supervised release, accounts for defendant's otherwise "pro-social career" and for having voluntarily forfeited the 62 firearms that ATF seized from his home. "The goal of general deterrence remains significant," where Gourdikian, as a sworn police officer, undermined "the public's confidence in the integrity of its police force" when violated federal law.

### C. 18 U.S.C. § 3553(a)(3)-(6)

Section 3553(a)(3)-(6) require consideration of the kinds of sentences available, the sentencing range, sentencing policies, and the need to avoid sentencing disparities. Gourdikian's use of licensed firearms dealers to facilitate the firearms sales is a mitigating factor in that he completed the paperwork needed for a third-party transfer of a firearm. However, he did structure the firearms transactions so to make each sale appear a sole when transaction and to hide that he was buying firearms for resale by purchasing firearms in one location and selling them in another, and

by lying on the forms. (Count Three). As noted by the USPO, any variance below a sentence of 30-months custody would be unwarranted and would fail to provide just punishment or promote respect for the law. (USPO Recommendation at 5.)

## VI. CONCLUSION

For the foregoing reasons, the government submits that the factors set forth in 18 U.S.C. § 3553(a) support the imposition of a sentence that includes a 30-month term of imprisonment, followed by a three-year term of supervised release with the eight conditions recommended by the USPO, payment of a special assessment of $200, and payment a total fine of $25,000 (consisting of a fine of $15,000 on Count One and $10,000 on Count Three to be paid in a lump sum). The government reserves the right to reply to Gourdikian's sentencing position.