NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
ELISA FERNANDEZ (Cal. Bar No. 172004)
JENNIFER CHOU (Cal Bar No. 238142)
Assistant United States Attorneys
Public Corruption & Civil Rights Section/
Violent & Organized Crime Section
     1500/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7383/6482
     Facsimile: (213) 894-8601/1373
     E-mail:    elisa.fernandez@usdoj.gov
                jennifer.chou@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>VASKEN KENNETH GOURDIKIAN,<br><br>          Defendant. | No. CR 18-104-SVW<br><br>GOVERNMENT'S SENTENCING RESPONSE;<br>DECLARATION OF ELISA FERNANDEZ;<br>EXHIBITS 1-7<br><br>Hearing Date: February 4, 2019<br>Hearing Time: 11:00 a.m.<br>Location:   Courtroom of the<br>                 Hon. Stephen V. Wilson |

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Elisa Fernandez and

Jennifer Chou, hereby files its response to defendant's sentencing

position.

     The government's sentencing response is based upon the attached

memorandum of points and authorities, the attached Declaration of

Elisa Fernandez, the attached exhibits, the files and records in this

case, the Presentence Report, the United State Probation Office's

Disclosed Recommendation, and such further evidence and argument as the Court may permit.

The government requests the right to file a response to any sentencing position filed or submitted by the defendant and to file supplemental sentencing position(s) that may be necessary.

Dated: January 29, 2019                Respectfully submitted,

                                       NICOLA T. HANNA
                                       United States Attorney

                                       LAWRENCE S. MIDDLETON
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                              /s/
                                       _____
                                       ELISA FERNANDEZ
                                       JENNIFER CHOU
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                      PAGE

TABLE OF AUTHORITIES.....................................................i

MEMORANDUM OF POINTS AND AUTHORITIES.............................ii

I.    INTRODUCTION.......................................................1

II.   GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING POSITION.......2

      A.   The Nature and Seriousness of the Offense Conduct
           Warrant a Custodial Sentence of 30 Months.................2

           1.   Defendant's Sale of 100 to 199 Firearms Warrant a
                Custodial Sentence of 30 Months.....................3

           2.   The Undisputed Facts Show Defendant Structured
                His Firearms Dealings So He Could Avoid Obtaining
                a Federal Firearms License..........................5

           3.   Defendant Capitalized on His Peace Officer Status
                as a Business Model.................................8

           4.   Under Section 3553, Defendant's "Gun Addiction"
                Warrants a Three-Year Period of Supervised
                Release & Counseling................................9

      B.   Consideration of Defendant's Education, Career and
           Charitable Work and Risk of Recidivism Supports the
           Imposition of a Sentence That Includes a Custodial
           Term of 30 Months.......................................11

           1.   Defendant's Education and Career as a Police
                Officer............................................11

           2.   Defendant's Civic Engagement & Charitable Work......12

           3.   Defendant's Likelihood of Recidivism...............14

      C.   Consideration of the Impact of Incarceration on
           Defendant's Family Warrants the Imposition of a
           Sentence That Includes a Custodial Term of 30 Months.....15

      D.   A Sentence to Include 30 Months Imprisonment, Is
           Sufficient, But Not Greater Than Necessary to Account
           for All Section 3553 Factors............................16

III.  CONCLUSION.........................................................18

i

1

**TABLE OF AUTHORITIES**

2

<u>DESCRIPTION</u>                                                      <u>PAGE</u>

3

**CASES**

4

*United States v. Calhoun*, 49 F.3d 231, 237 (6th Cir. 1995)........13

5

*United States v. Cartman*, 607 Fed. Appx. 888 (11th Cir. 2015).......9

6

*United States v. Cooper*, 394 F.3d 172 (3rd Cir. 2005)( ............11

7

*United States v. Jordan*, 130 F. Supp. 2d 665, 673 (E.D. Pa.
        2001)....................................................12

8

*United States v. McGowan*, CR 12-207 (E.D. Cal 2016)lifornia.....4, 14

9

*United States v. Morken*, 133 F3d 628 (8th Cir. 1998) ..............11

10

*United States v. Neil*, 903 F.2d 564, 566 (8th Cir. 1990) ..........12

11

*United States v. Pascucci*, 943 F.2d 1032, 1037 (9th Cir. 1991)...5, 6

12

*United States v. Sailes*, 872 F.2d 735, 739 (6th Cir. 1989)........14

13

*United States v. Thurston*, 358 F.3d 51, 78 (1st Cir. 2004) ........11

14

15

16

**STATUTES**

17

18 U.S.C. § 3553.................................................1, 8, 14

18

18 U.S.C. § 3553(a)(1)..............................................9

19

18 U.S.C. § 3553(a)2)..............................................13

20

18 U.S.C. § 3553(a)(3)-(6).........................................14

21

18 U.S.C. § 3571(b).................................................2

22

18 U.S.C. § 922..................................................1, 3

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   INTRODUCTION

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

Defendant Vasken Kenneth Gourdikian ("defendant" or "Gourdikian") admitted to unlawfully engaging in the business of selling at least 108[1] guns without a federal firearms license, in violation of 18 U.S.C. § 922(a)(1)(A)(Count One), and making a false statement during the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6) (Count Three).  Pursuant to a written plea agreement, the parties agreed to a guideline range of 30 to 37 months (based on an offense level 19[2] and Criminal History I).  Defendant requests a non-custodial sentence and asserts that several factors warrant a deep departure/variance from the low-end of the agreed upon guideline of 30 months.  The government submits that the factors set forth in 18 U.S.C. § 3553(a) do not warrant a non-custodial sentence, regardless of the conditions.  The government and the United States Probation Office ("USPO"), having each fully considered the factors set forth in 18 U.S.C. § 3553, each independently recommended that the Court impose a sentence of 30 months imprisonment.[3]

19

20

21

22

[1] Defendant admits to selling 108 firearms without a license. This figure does not include the firearms seized from defendant's residence or thirty-three additional firearms referenced in Exhibit 1.

23

24

25

[2] The parties agreed to a base offense level of 12 (USSG § 2K2.1(a)(7)), an 8 level increase for 100 to 199 firearms (USSG § 2K2.1(b)(1)(D)), and a 2-level increase for abusing a position of trust (USSG § 3B1.3)), a -3 level departure of acceptance of responsibility.  (PSR ¶ 4.)

26

27

28

[3] The USPO further recommends that a upon serving 30 months custody the defendant should be placed on supervised release for a period of one year and be ordered to pay a total fine of $10,000 ($5,000 on each count).  The government requests the Court to order defendant to serve a three-year period of supervised release following a 30-month term of imprisonment and to pay a total fine of $25,000 ($15,000 on Count One and $10,000 on Count Three).

For the reasons set forth below, the factors enumerated in Section 3553 support the imposition of a sentence that includes a 30-month term of imprisonment, followed by a three-year term of supervised release with the eight conditions recommended by the USPO, payment of a special assessment of $200, and payment a total fine of $25,000 (consisting of a fine of $15,000 on Count One and $10,000 on Count Three to be paid in a lump sum).

## II. GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING POSITION

### A. The Nature and Seriousness of the Offense Conduct Warrant a Custodial Sentence of 30 Months

In seeking a non-custodial sentence, defendant understates the nature and seriousness of his offenses.  It is undisputed that defendant sold at least 108 firearms to the public through FFLs as third-party transfers.  (PSR ¶ 15; *see also*, Declaration of Gary Tang ¶ 3-4; Exhibit 1.)  While he accepted payment directly from the purchasers,[4] the FFLs took the licensing fees and paperwork.[5] Defendant argues that by using an FFL for "every transfer" he was "complying with state and federal recording requirements." (Def. Pos. 17.)  In actuality, on at least one occasion, Gourdikian "materially made a false statement on a re-certification form prior to taking possession of a firearm." (PSR ¶ 14.)  In doing so, he misrepresented that he was the actual buyer of a firearm when, in fact, "he was purchasing the firearm for another individual." (*Id.*)  Defendant argues that by processing his sales through an FFL he was

---

[4] Defendant acknowledges that, for example, while at an FFL "the undercover agent gave Mr. Gourdikian $700" for a "Mossberg model SPX 12-gauge shotgun." (Def. Pos. 18, fn 7.) The FFL took the registration fees and documents.  (*Id.*)

[5] Since 2014, the California Department of Justice receives information regarding purchases from FFLs that entered into the Automated Firearms System ("AFS").

2

"ensuring that he was not selling to a prohibited person." (Def. Pos. 17.)  Gourdikian, however, concedes, "[t]he private gun market . . . has long been recognized as a leading source of guns used in crimes." (Def. Pos. 17, fn. 5.)   In fact, on February 27, 2016, Gourdikian purchased a firearm; 68 days later on May 6, 2016, local police recovered the firearm at a site associated with a narcotics investigation.  (Exhibit 2.)

1. <u>Defendant's Sale of 100 to 199 Firearms Warrant a Custodial Sentence of 30 Months</u>

Defendant admits to selling at least 108 firearms.  (PSR ¶ 15.)  In actuality, during the period alleged in the indictment, defendant sold 141 firearms from March 15, 2014 to February 9, 2017. (Declaration of Gary Tang ¶ 3-4; Exhibit 1.)  Sentencing guideline Section 2K2.1 provides for harsher sentences as the number of firearms involved in the offense increase.  Here, defendant stipulated to and the USPO applied an eight-level sentencing enhancement where defendant unlawfully sold between 100 and 199 firearms.  The eight-level adjustment captures ongoing public concern with firearms, including the sale of more than 100 firearms and the introduction of those firearms in the public sphere.  (PSR ¶ 4; 37.)  In seeking a non-custodial sentence, defendant improperly equates his conduct to that of defendant who sold less than three firearms.  *See* U.S.S.G. § 2K2l1(b)(1)(A) (providing that one offense involving three or more firearms should be increased from +2 to +8 levels, or more, depending on the number of firearms involved in the offense conduct.) In the present case, through advertisements and carefully structured purchases and sales, the defendant sold more than 100 firearms in three years.  Neither the sentencing guidelines, nor Section 3553

support such a result.  Defendant stresses that he is not a prior
felon nor did he sell directly to prohibited persons. (Def. Pos. 17.)
Defendant's conduct, however, was unlawful.  In furtherance of his
crimes, Gourdikian unlawfully sold 141 firearms (he admits to 108
unlawful sales).  His business model incorporated repeated
exploitations of the privileges afforded him as sworn police officer
and deceptive tactics.  In a case similar to this matter, *United
States v. McGowan*, CR 12-207, (CA. E.D. 2016), a district court in
the Eastern District of California sentenced a former sheriff to a
custodial term for been found by a jury to have engaged in the
business of dealing twenty-seven firearms without a license, in
violation of 18 U.S.C. Section 922(a)(1)(A), and conspired to make a
false statement with respect to firearm records, in violation of 18
U.S.C. § 371.  (Exhibit 3, Reporter's Transcript ("RT") 06/30/2016
2:12-18.)  At McGowan's sentencing hearing, the court found that the
adjusted base offense level of 20, which included a base offense
level of 12 under U.S.S.G. § 2K2.1(a)(7), a six-level increase for 25
to 99 firearms under U.S.S.G. § 2K2.1(b)(1)(C), a two-level
enhancement for abuse of trust under U.S.S.G. § 3B1.3.  (Exhibit 3,
RT 06/30/2016 12:1-19.)  As a law enforcement officer, McGowan, like
Gourdikian, fell within Criminal History Category I.  (*Id*.)
McGowan's resulting guideline range of 33 to 41 months.  (*Id*.)  The
court in *McGowan* imposed a custodial sentence of 18 months, a one-
year period of supervised release, and a fine of $7,000.  (Exhibit 3,
RT 06/30/2016 22-23.)  Here, Gourdikian sold at least four times the
number of firearms that McGowan sold within a similar three-year
period (27 x 4 = 108 firearms).  (PSR ¶ 15.)  A sentence of less than

4

30 months custody would fail to reflect the more than 100 firearms
that he unlawfully sold in three years.

 2.   The Undisputed Facts Show Defendant Structured His
      Firearms Dealings So He Could Avoid Obtaining a
      Federal Firearms License

 The undisputed facts indicate that defendant, knowing his
conduct to be unlawful, sought to evade detection so as to avoid
having to obtain a federal firearms license that would have
prohibited him from selling more than seventy-five percent of his
merchandise.  This Court should reject defendant's contention that
his offense conduct was based on an oversight, that is, a mere
failure to fill out an application and pay fee.  (*Id*.) However, the
facts demonstrate that defendant knew that his conduct was unlawful
and proceeded to sell more than a hundred firearms.  In January of
2016, defendant made clear through a series with a Calguns.net user
that he was not ignorant of the law.  (Exhibit 4.)

    01/26/16 GOURDIKIAN:
    Beautiful collection. . . Have any of these weapons been fired?
    I know there are some rare pieces but the prices seem to be high
    regardless. . . If you had an all cash buyer what is your bottom
    figure for the lot..?  Thanks, Gordy

    01/27/16 CALGUNS USER A:
    Hello Gordy. . . Yes, I have a beautiful collection for sale. .
    . You realize that we have the best stuff and these tend to be
    rare off roster items.

    01/27/16 GOURDIKIAN:
    . . . I agree your stuff is stellar . . . I'm an Leo [law
    enforcement officer] and I can acquire off roster stuff as well
    so I am aware of msrp's and i know what my price point is. . .
    I'm curious if you would package the collection. . .? The only
    thing is that the prices for me are high bit for people that
    can't buy off roster . . . someone will pay your prices.
    Thanks. . .

01/28/16 CALGUNS USER A:
. . . Gordy. . . [C]alif market is a strange market but it seems we have been able to find a 'micro-niche' within [C]alif to sell high end, rare and unavailable stuff.  . . if you have LE [law enforcement] exempt roster status, you could 'duplicate' and collect this stuff yourself.  It may take a few years and a lot of LE exempt status on the paperwork.  I know our Sheriff is keeping an eye for that problem.  Two . . . deputies were fired for flipping LE exempt pistols.  . . . Thanks

02/2/16 CALGUNS USER A:
Hello Gordy . . . Just out of curiosity, how does someone working for a local, state or federal constabulary afford to buy such a nice collection such as mine? . . [the user lists prices for 14 firearms.] The total is North of $86,600.  . . . It will have to go through an FFL dealer and be above board.  We may need to call [C]alif DOJ to let them know about this volume of transaction so there is no 'freeze' on this transaction.

02/3/16  CALGUNS USER A:
. . . Hi Gordy, You are obviously a veteran and one good at finding deals. . . . I don't want to let them go for substantially less. Yes my prices are tippee toe top shelf high, but that's for the work of locating and negotiating them to come to [C]alif... By you having LE exemption status, you are better than the avg Calgunner but there is someone from some agency (your supervisors) watching.  I've seen a lot of dept letterheads go by to qualify officers and agents to buy pistols and some people have misused that privilege.

This exchange of messages demonstrates defendant knowing and intentional disregard of firearms laws, rather than mere error or oversight, and such intentional conduct warrants the government's recommended 30-month sentence, not the probationary sentence requested by defendant.  The government does not contend that the defendant violated the law by reselling an off roster firearm.  As defendant was not a licensed FFL, he could purchase off roster firearms and sell them directly to the public as a third-party transfer.  Defendant could lawfully purchase and lawfully sell an off roster firearm.  Rather, in response to defendant's request for a

6

downward variance or departure, the government contends that a 30-month sentence that is at the low end of the stipulated Guidelines (which includes the stipulated enhancement for abuse of position of authority) takes into account the fact that defendant's business model fully exploited and relied on his privilege as a law enforcement officer.  As the defendant could, unlike an FFL, sell "brand new," "never fired," "off roster" firearms to non-law enforcement customers. (PSR ¶ 15.)  *See United States v. Pascucci*, 943 F.2d 1032, 1037 (9th Cir. 1991) (applying a two-level adjustment where a Deputy U.S. Marshal used his government identification to obtain a victim's address and phone number from a business and used his law enforcement contacts to obtain the victim's new address and his spouse's name.)  Approximately 75 percent of the firearms defendant sold (80 out of 108) were "off roster" firearms – firearms that under California law an FFL could not have sold to a non-law enforcement customer.  (*Id.; see also* Def. Pos. 21 (acknowledging that the California Roster of firearms places restrictions on FFL's selling of off roster firearms.)  The facts demonstrate that defendant did not obtain a federal firearms license because doing so would have cost him 75 percent of his sales.

In seeking a non-custodial sentence, defendant simply ignores that "[h]e structured his transactions so that the sale of the firearms did not take place at the same licensed federal firearms dealer where he initially purchased the firearms." (PSR ¶ 15; Exhibit 1.)  Of the 108 firearms defendant admitted to selling, he never sold a firearm at the same place he purchased it.  Thus, even limiting the analysis to the 108 firearms he admitted selling, defendant took care to sell each firearm in 108 different locations

than the locations where he purchased them.  In doing so, it is clear that defendant attempted to thwart the gun laws by conducting 108 sales in multiple cities in three counties (Los Angeles, Orange and San Bernardino Counties.)  (Indictment (Count One) at 5; Exhibit 1.)

### 3.   Defendant Capitalized on His Peace Officer Status as a Business Model

In seeking a non-custodial sentence, defendant asks the Court to disregard that he "capitalized on his peace officer status" in several respects.  However, this Court should take this conduct into account in rejecting defendant's request for a probationary sentence and imposing the 30-month custodial sentence recommended by the government.  A probationary sentence is not justified, given defendant's uncontested exploitation of a state law that generally prohibited the purchase of more than one handgun within any 30-day period." (PSR ¶ 19.)  For example, defendant admitted that on May 23, 2015, he purchased an off roster Glock model 43 pistol, bearing serial number ZMY218 (the "Glock 43 (ZMY218)"), using a letter from the Pasadena Police Department Chief of Police to take possession of the Glock 43 without waiting for the usual ten-day waiting period. (*Id*.)  As he picked up the Glock 43 (ZMY218), Gourdikian purchased eight additional handguns (at the end of the 10-day wait period he picked up the additional eight firearms).  (PSR ¶ 19.)  By June 5, 2015, defendant had sold the Glock 43 (ZMY218) and the other eight firearms.  (*Id*.)  By capitalizing on exemptions uniquely available to him as a law enforcement officer, defendant was in a shorten period able to restock his sales inventory.  As demonstrated in Government's Exhibit 1, of the 141 total firearms Gourdikian sold in the three years alleged in the indictment, he sold 122 of the 141 within a year

8

of having purchased them.  Of this number, he sold 79 firearms within six days of purchase, 60 firearms within thirty days of purchase, 20 firearms within fourteen days of purchase, and two firearms within ten days of purchase.  (Exhibit 1.)  In sum, defendant requests a non-custodial sentence, but ignores the undisputed fact that he "made a business of dealing firearms without a license, in part, by abusing exemptions made to him under California law as a sworn peace officer."  (PSR ¶ 15.)  Accordingly, this Court should impose the government's recommended 30-month low-end sentence.

> 4.   Under Section 3553, Defendant's "Gun Addiction" Warrants a Three-Year Period of Supervised Release & Counseling

Defendant attempts to excuse his criminal conduct with what he describes as "an escalating addiction to collecting firearms." (Def. Pos. 14.)  The Court should reject this argument.  As briefed previously, defendant's insistence on cash over trades undercuts the characterization that his desire/addition to amass a gun collection fueled his unlawful conduct.  (Gov. Pos. 9, 12.)

If Gourdikian had been principally motivated to build a collection, then he would not have been so insistent on selling his firearms for money, repeatedly rejecting offers for trades.  (*Id.*; PSR ¶ 24 (Gourdikian sold an undercover agent a Mossberg model SPX 1-guage shotgun for $700.))  Further undercutting his argument is that defendant sold multiples of the same firearm.  (Exhibit 1.) Defendant "posted advertisements to sell firearms, including firearms described as "off roster," "BNIB [brand new in box]," and "never fired."  (PSR ¶ 15.)  Defendant would post photographs of the firearms inside their boxes.  (Exhibit 5.)  Consistent with his Calguns.net advertisements, during the search of defendant's

residence, agents seized several firearms in their original packaging. (Exhibit 6a.) In his garage, inside a locked gun cabinet on the top shelf and hanging on the door were stored handguns similar to the firearms he sold, including a Mossberg. (Exhibit 6b.) The bottom section/shelf of the gun cabinet held firearms that were likely part of Gourdikian's personal collection, as they generally were not consistent with the type of firearms he sold. (Exhibit 6b.) The garage also held several empty firearms boxes. (Exhibit 6c.) Such factors suggest that defendant amassing an inventory of products for sale, rather than building a unique collection.

Even assuming that defendant does suffer from an obsessive addiction with firearms, the Court should nevertheless reject defendant's request for a probationary sentence and impose the government's recommended custodial sentence of 30 months. After all, an addiction so severe that it fuels unlawful conduct over a span of multiple years warrants the need to protect the public and the imposition of additional restrictions and conditions, not less. (PSR ¶ 28) see *United States v. Cartman*, 607 Fed. Appx. 888 (11th Cir. 2015)(not published) (finding that a defendant's (responsible for 23 firearms and within Criminal History Category IV) "obsession" with guns did not minimize the court's concern, but magnified it.) In *Cartman*, the court considered defendant's "obsession" with guns, coupled with other factors, as an aggravating factor that supported a high-end guideline sentence. (*Id.; see also*, *United States v. Oliver*, 654 Fed. Appx. 735, 743 (11th Cir. 2016) (upholding a district court's decision to sentence a defendant above the respective Guideline range, in part, because an upward variance was appropriate, given the defendant's "apparent obsession with guns.")

Thus, under Section 3553 a longer period of supervised release would protect the public and permit defendant to seek counseling for his addiction.

**B.   Consideration of Defendant's Education, Career and Charitable Work and Risk of Recidivism Supports the Imposition of a Sentence That Includes a Custodial Term of 30 Months**

Defendant's education, lengthy law enforcement career, extensive civic engagement and recidivism risk, do not warrant a variance or departure form 30 months to a non-custodial sentence.

1.   <u>Defendant's Education and Career as a Police Officer</u>

Defendant's education and lengthy career and distinguished career as law enforcement officer are certainly positive and mitigating factors for the Court to consider.  However, on balance, such mitigation does not warrant either a departure or variance from the low-end of the agreed upon sentencing range of 30 to 37 months. The sentencing guidelines instruct that a defendant's "[e]ducation and vocational skills are not ordinarily relevant in determining whether a departure is warranted," but may be relevant in determining conditions of supervised release/probation.  U.S.S.G. § 5H1.2 (such factors may also support an upward adjustment under U.S.S.G. § 3B1.1). A defendant's employment records is also not ordinarily relevant at sentencing.  U.S.S.G. § 5H1.5.  A defendant's work history may be relevant in determining conditions of supervised release/probation. (*Id.*)

Gourdikian, a police lieutenant and a police officer for more than twenty years, holds a bachelor degree in criminal justice and a master's degree in public administration.  (PSR ¶¶ 67-71.)  His work in law enforcement and public service, on its own, is distinguished

11

1    and admirable.  Nonetheless, defendant chose to commit a series of
2    acts over a three-year period that led to two federal felony
3    convictions.  (PSR ¶¶ 67-71.)  Despite having sworn to uphold the
4    law, he elected to thwart federal law and circumvent state gun laws.
5    In sum, defendant's education and lengthy public service record,
6    although mitigating, do not justify defendant's requested
7    probationary sentence.  *See e.g., United States v. Rita*, 551 U.S.
8    338, 127 S.Ct. 2456, 2461 (2007) (upholding a within guideline
9    sentence of 33 to 41, following convictions for perjury, obstruction
10   and false statements, where the defendant had been "involved in
11   detecting criminal offenses," had twenty-five years of military
12   service (including active duty) and had been awarded medals.)

13           2.   Defendant's Civic Engagement & Charitable Work

14       Defendant's extensive civic engagement earned him a respected
15   reputation in the community.  Both are commendable, but they do not
16   support a variance/departure, particularly where defendant's
17   profession required community engagement, where defendant used at
18   least one charity-fundraising related account to co-mingle funds for
19   his business, and where personal volunteerism is common among
20   professional defendants.  The guidelines provide that "[c]ivic,
21   charitable or public service, employment-related contributions, and
22   similar prior good works are not ordinarily relevant in determining
23   whether a departure is warranted."  U.S.S.G. § 5H1.11.  As set forth
24   below, defendant's charitable work does not support his requested
25   variance to a non-custodial sentence.

26       Pointing to extensive engagement in his community, Gourdikian
27   requests a non-custodial sentence.  (Def. Pos. 19.)  In support of
28   this request, Gourdikian cites several cases, including *United States*

1    *v. Cooper*, 394 F.3d 172 (3rd Cir. 2005)(*citing United States v.*

2    *Thurston*, 358 F.3d 51, 78 (1st Cir. 2004)).  (Def. Mot. 12.)

3    Gourdikian, however, overlooks that *Thurston* actually reversed a

4    downward departure for civic engagement for a business executive

5    convicted of fraud and tax charges who had donated ten percent of his

6    income and had given several hours of service per week to charity.

7    *Thurston*, 358 F.3d at 78; *see also*, *United States v. Morken*, 133 F3d

8    628 (8th Cir. 1998) (reversing a downward departure for a high-profile

9    business man who had raised money for charity, served on a church

10   council, advised local businesses and employed local youth).

11       In this case, Gourdikian acted as the department's

12   "representative to the community." (PSR ¶ 73.)  By virtue of his

13   position, "he spent time in charge of the community services section

14   of Pasadena." (PSR ¶ 73.)  "Through [this position] he was the co-

15   vice president of an after school program and raised more over

16   $200,000." (*Id.*)  Defendant's character letters speak highly of him

17   and reflect the community's appreciation of him.  They also show that

18   his charitable work was tied to his employment, including his work

19   with the Pasadena Police Activities League ("PAL) (an afterschool

20   program) and the Pasadena Armenian Police Advisory Council ("PAPAC").

21   (Def. Mot. 9.)

22       These activities are, on their own, mitigating.  However,

23   defendant at times used his charity work to further his illegal

24   firearms conduct.  In regards his charity-related fundraising

25   efforts, defendant controlled a Chase Bank account in the name of

26   "Gourdikian, dba Gourdikian Blue Smoke.  As demonstrated in Exhibit

27   7, defendant held fundraisers under the name Blue Smoke to raise

28   funds for organizations such as PAL.  (Exhibit 7.)  A review of this

bank account shows that defendant co-mingled fundraising/donations with the proceeds of his firearms sale and utilized the account to purchase firearms. (*Id.*) Given this mismanagement of charitable accounts, the Court should not impose defendant's requested variance or departure to a non-custodial sentence.

Defendant's mentoring did provide great value to the community, but it also does not justify a non-custodial sentence. *See e.g. United States v. Neil*, 903 F.2d 564, 566 (8th Cir. 1990)(finding that defendant's coaching of young athletes was insufficient to distinguish defendant from others); *United States v. Jordan*, 130 F. Supp. 2d 665, 673 (E.D. Pa. 2001)(finding that while defendant's role as a mentor and his other public service were commendable they did not warrant a departure.) (PSR ¶ 73.) Ultimately, while Gourdikian's charitable work benefitted the community, defendant and the police department also benefitted. Defendant proffers no evidence as to what portion of his charitable work related to his employment and position in the community. At any rate, although such work had value, it does not justify reducing his 30-month Guideline sentence to probation.

### 3. Defendant's Likelihood of Recidivism

The Ninth Circuit has rejected defendant's assertion that a low-risk of recidivism can form the basis departure. See *United States v. Working*, 287 F.3d 801, 808 (9th Cir. 2002) (*citing Koon v. United States*, 518 U.S. 81 (S.Ct. 1996). By creating a lower sentencing range under Criminal History Category I for first-time offenders, the guidelines already take into account a defendant's low likelihood of recidivism. *Id*. Moreover, while defendant asserts that a probationary sentence would succeed in deterring him from committing

14

future crimes, this Court must impose a sentence that "affords adequate deterrence" that includes general deterrence to others who would commit similar crimes. *See* 18 U.S.C. § 3553(a)(2). Defendant fails to provide any argument regarding general deterrence, even though the USPO has identified that "the goal of general deterrence [in this case] remains significant, as Gourdikian's conduct as a sworn officer undermines the public's confidence in the integrity of its police force." (USPO Recommendation at 5.)

### C. Consideration of the Impact of Incarceration on Defendant's Family Warrants the Imposition of a Sentence That Includes a Custodial Term of 30 Months

The impact of custodial sentence would not impose an undue hardship on Gourdikian's family, particularly since the family is financially secure and supported by friends and extended family. (PSR ¶ 74.) Sentencing Guideline Section 5H1.6 provides that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted," but a district court may impose a below-guidelines sentence once "once it finds that a defendant's family ties and responsibilities ... are so unusual that they may be characterized as extraordinary." U.S.S.G. § 5H1.6. A variance below 30 months custody is also unwarranted. Defendant contends that a custodial sentence would impose an extraordinary hardship on his family. (Def. Pos. 17.) Such hardships do not warrant a variance or a departure.

Defendant's family is financially secure. Defendant's total net worth exceeds $2 million dollars. (PSR ¶ 74.) While incarcerated, his family will continue to receive rental income, spousal income, interest income and dividend income. (Id.) Defendant will receive pension benefits based on approximately twenty years of service.

15

(Def. Pos. 31.)  Defendant's wife is an accountant and runs an income tax practice.  (PSR ¶ 59.)  Defendant has two children who are young adults.  One is in college and the other will soon graduate high school.  (PSR ¶ 60.)  In 2015, defendant's wife was diagnosed with a thyroid condition.  (PSR ¶ 59.)  As a result, she takes heart medication and recently underwent eye surgery.  (*Id.*)  Currently, she is in stable condition.  (*Id.*)  While he is in custody, defendant's family has the financial means to care for defendant's wife and their children.  His wife and children also have the support of nearby friends and extended family.  (PSR ¶ 57.)  A defendant's actions often adversely affect his family.  The heartache and hardship that Gourdikian's wife and children will feel in his absence do not warrant a non-custodial sentence.  *See e.g., United States v. Calhoun*, 49 F.3d 231, 237 (6th Cir. 1995) (affirming district court's refusal to depart downward for mother sentenced to 87 months in prison despite having a fourteen-month old infant); *United States v. Sailes*, 872 F.2d 735, 739 (6th Cir. 1989) (affirming district court's refusal to depart downward for mother of seven children who was convicted of drug crime and sentenced to 45 months in prison.)

   **D.   A Sentence to Include 30 Months Imprisonment, Is Sufficient, But Not Greater Than Necessary to Account for All Section 3553 Factors**

   A non-custodial sentence would fail to reflect the seriousness of the offense, provide just punishment, provide adequate deterrence, protect to public or promote respect for the law.  Defendant asserts that the loss of his career, pension benefits, reputation and the forfeiture of his firearms is punishment enough.  (Def. Pos. 5-6, 26.) Defendant is mistaken.  Defendant's assets, including three properties, cars and several bank accounts, are valued over $2

16

million.  (PSR ¶ 74.)  The government requests a punitive fine of
$25,000, which is at the lower-end guideline fine range of $10,000 to
$100,000. *See* USSG §5E1.2(c)(3).[6]  Payment of such a fine will leave
defendant's more than $2 million in assets largely intact.  On a
separate note, defendant's argument appears to suggest that a
defendant who had less to money or property to lose should serve a
custodial sentence.  Such a result, if suggested, would be improper.

Gourdikian, like every member of the public, was required to
follow the law, but he knowingly decided to violate it, and his
conduct does not justify his requested probationary sentence.
Instead, the Court should impose the 30-month low-end sentence
requested by the government, as defendant abused the trust granted to
him as a law enforcement officer and sought to hide his conduct by
structuring his firearms transactions, co-mingling firearms proceeds
with charitable proceeds and making a false statement in connection
with a firearms sale.  In a very similar case, the District Court in
the Eastern District of California sentenced former sheriff McGowan
to serve a custodial term of 18 months.  (Exhibit 2, RT 06/30/2016
27-28.)  The court found McGowan to have sold 27 firearms in three-
years without a license (and conspired to make a false statement).
Similar to Gourdikian, McGowan had an "exemplary employment record"
and "a job offer on the table," he lost his job in law enforcement
and could not possess firearms. (*Id*. at 12-13.)  While McGowan had
been on a good track in his law enforcement career, "did something
that was monumentally stupid...and monumentally criminal." (*Id*. at

---

[6] There is no agreement in the plea agreement as to the amount
of a fine or as to the government's obligations regarding its
recommendation to this Court at sentencing regarding the amount of a
fine.

27.)  The *McGowan* court stated that part of the sentence was "intended to deter others, including law enforcement officers, form committing similar offenses." (*Id*. at 28.)  Deterrence, in cases, such as this include the need to deter "police officers who may engage in this same type of conduct who have access to off roster weapons." (Exhibit 2, RT 06/30/2016 20-21.)  Today, in the present case, "the goal of general deterrence remains significant, as Gourdikian's conduct as a sworn officer undermines the public's confidence in the integrity of its police force." (USPO Recommendation at 5.)  To promote respect for the law and to provide adequate deterrence for the defendant and other law enforcement officers, the Court should reject defendant's request for a downward departure or variance to a probationary sentence and instead impose the government's recommended sentence that includes a 30-month term of imprisonment, followed by three years of supervised release, and a punitive fine of $25,000.

**III. CONCLUSION**

For the foregoing reasons, the government submits that the factors set forth in 18 U.S.C. § 3553(a), support the imposition of a sentence that includes a 30-month term of imprisonment, followed by a three-year term of supervised release with the eight conditions recommended by the USPO, payment of a special assessment of $200, and payment a total fine of $25,000 (consisting of a fine of $15,000 on Count One and $10,000 on Count Three to be paid in a lump sum).